**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **LEWIS HEACKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 09-4270-CV-W-GAF |
| | ) | |
| **AMERICAN FAMILY MUTUAL** | ) | |
| **INSURANCE COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Presently before the Court are Plaintiff Lewis Heacker's ("Plaintiff") and Defendants American Family Mutual Insurance Company ("American Family") and Nationwide Insurance Company of America's ("Nationwide") (collectively "Defendants") Motions for Summary Judgment pursuant to Fed. R. Civ. P. 56. (Docs. ## 160, 162, 171). For the reasons set forth below, Plaintiff's Motion for Summary Judgement is DENIED, and Defendants' Motions for Summary Judgment are GRANTED.

## DISCUSSION

**I.     FACTS**

**A.     Background Facts**

On July 21, 2009, the Circuit Court of Jackson County, Missouri, in case number 0716-CV18988 (the "underlying case"), entered a judgment against Defendant Jessica Wright ("Wright"), and in favor of Plaintiff, for $2,300,000.00 in compensatory damages and $5,000,000.00 in punitive damages. (Doc. # 141-1). In the underlying case, Plaintiff asserted claims against Wright for Childhood Sexual Abuse, Battery, Breach of Fiduciary/Confidential Relationship, Negligent Failure to Supervise Children, Premises Liability, Intentional Infliction of Emotional Distress and Negligent

Infliction of Emotional Distress. (*See* Doc. # 161-2). The Petition in the underlying case alleged Wright's improper conduct occurred between approximately 1999 and 2007. (*Id.*).

On July 19, 2009, Plaintiff and American Automobile Insurance Company entered into an Agreement to Limit Recovery to Specific Assets Pursuant to Mo. Rev. Stat. § 537.065 (the "537.065 Agreement"). (Doc. # 141-2). Among other things, the 537.065 agreement limited Wright's personal liability, seeking instead the proceeds of numerous insurance policies she held, and contained a provision requiring American Automobile Insurance Company, the underwriter for a variety of policies purchased by Wright (collectively the "Fireman's Fund Policies"), to make a payment in the amount of $305,000.00 to settle claims relating to the Fireman's Fund Policies. *Id.* Specifically, the 537.065 Agreement states, in part:

> Defendant had purchased policies of insurance from American Automobile Insurance Company under a variety of policy numbers (hereinafter "Fireman's Fund Policies") . . . American Automobile Insurance Company is willing to make a payment on behalf of defendant for the acts alleged during its policy periods. Said payment is in the amount of $305,000.00. Plaintiff has agreed to accept said amount in full for any acts covered during its policy periods.

The 537.065 Agreement also makes clear Plaintiff sought to collect from Defendant Jessica Wright's insurance policies underwritten by Defendants Safeco Insurance Company, Nationwide, and American Family. *Id.* Plaintiff, in the case at hand, alleges the proceeds from insurance policies issued by Defendants should be paid to Plaintiff in satisfaction of the judgment entered in the underlying case. (Petition, ¶ 25).

**B.     Facts Relevant to American Family**

American Family issued Policy Number 15-BL2465-01 (the "Am. Fam. Policy") to Wright, which first became effective on October 27, 2007.  (*See* Am. Fam. Policy).  Relevant portions of the Am. Fam. Policy read as follows:

> **The following words in this policy have defined meanings.**
> **They will be printed in bold type.**
> 1.  **Bodily Injury** means bodily harm, sickness or disease.  It includes resulting loss of services, required care and death.
>     **Bodily Injury** does not include:
>     a.   any of the following which are communicable: disease, bacteria, parasite, virus or other organism which are transmitted by any insured to any other person;
>     b.   the exposure to any such communicable disease, bacteria, parasite, virus or other organism; or
>     c.   emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person.
>
> \*   \*   \*
>
> 9.  **Occurrence** means an accident, including exposure to conditions, which results during the policy period, in:
>     a.   **bodily injury**; or
>     b.   **property damages**.
>     Continuous or repeated exposure to substantially the same general harmful conditions is considered to be one **occurrence.**
>
> \*   \*   \*
>
> **LIABILITY COVERAGES - SECTION II**
>
> **COVERAGE D - PERSONAL LIABILITY COVERAGE**
>
> **We** will pay, up to **our** limit, compensatory damages for which any **insured** is legally liable because of **bodily injury** or **property damage** cause by an **occurrence** covered by this policy.
>
> \*   \*   \*

## EXCLUSIONS - SECTION II

**Coverage D - Personal liability and Coverage E - Medical Expense** do not apply to:
1. **Abuse. We** will not cover **bodily injury** or **property damage** arising out of or resulting from any actual or alleged:
   a. sexual molestation or contact;
   b. corporal punishment; or
   c. physical or mental abuse of a person.

   * * *

8. **Illegal Consumption of Alcohol. We** will not cover **bodily injury** or **property damage** arising out of the **insured's** knowingly permitting of failing to take action to prevent the illegal consumption of alcohol beverages by an underage person.

   * * *

10. **Intentional Injury. We** will not cover **bodily injury** or **property damage** caused intentionally by or at the direction of any insured even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of any **insured**.

(*See* Am. Fam. Policy) (emphasis in original).

The acts giving rise to the Judgment in the underlying case in favor of Plaintiff that occurred between October 27, 2007, and July 21, 2009, are: (A) six (6) telephone calls to Plaintiff or others regarding Plaintiff; (B) the interception of an e-mail to Plaintiff by Wright's son; and (C) Plaintiff's girlfriend receiving phone calls and text messages she believed were from Wright. (*Compare* Doc. # 161, ¶ 20, p. 6 *with* Doc. # 176, ¶ 20, p. 8). The following is a list of the six (6) phone calls Plaintiff received, including the date they were made and a brief description of the nature of each call:

| | |
|---|---|
| August 2, 2008 | Wright's SpoofCard[1] account used to contact the City of Leawood Police Department. |
| January 13, 2008 | Wright's SpoofCard account used to contact Desiree Brockett twice at approximately 3:00 a.m. |
| December 8, 2007 | Wright's SpoofCard account used to contact Plaintiff, with the outgoing number changed to (913) 484-1444 and caller's voiced altered. |
| November, 16, 2007 | Wright's SpoofCard account used to contact Plaintiff, with the outgoing number changed and the caller's voice altered. |
| November 11, 2007 | Wright's SpoofCard account used to contact Plaintiff in the same manner mentioned above. |
| November 3, 2007 | Wright's SpoofCard account used to contact Plaintiff in the same manner mentioned above. |

(Doc. # 176, ¶ 20, p. 8-9).

As a result of the acts that occurred between October 27, 2007, and July 21, 2009, Plaintiff claims he "suffered emotional damages including fear, insecurity, paranoia, fear of leaving his home, fear of being embarrassed in front of his friends, damaged relationships with friends; he was distraught; anxiety that leads to not being able to sleep, eat or associate with people; depression; expressed suicidal intentions" and "has anxiety attacks, which include 10 to 20 minutes of chest tightness, shortness of breath, racing thoughts and worry related to Jessica Wright." (*Compare* Doc. # 161, ¶ 21 *with* Doc. # 176, ¶ 21, p. 10-11; *see also* Plaintiff's First Supplemental Answer to Defendant American Family Mutual Insurance Company's Opening Interrogatory # 22). Plaintiff also implies Wright's actions caused him to become alcohol dependant. However, Plaintiff admits

---

[1] From the evidence and the parties' description, it appears "SpoofCard" is a service that allows a person to call someone and change the number that displays on the recipient's Caller ID and/or disguise your voice. (*See* Doc. 172, Ex. 11).

5

Wright never provided alcohol or drugs to him after July of 2006, nor did she engage in sexual activity with him after that date. (Heacker Depo., 56:6-25). Additionally, Plaintiff suggests he also suffers from Post Traumatic Stress Disorder ("PTSD"), in part, "as a result of statements made against his friends and girlfriends and Ms. Wright's 'persistent attempts to slander or control him.'" (Doc. # 176, p. 13; underlying case Trial Transcript 759:1-16).

There is no evidence suggesting Plaintiff ever suffered an injury as a result of a physical attack by Wright or her children. Plaintiff, in his deposition testimony, states neither Wright nor her children cause him physical harm on or after October 27, 2007. (*See* Deposition of Lewis A. Heacker ("Heacker Depo."), 57:22-58:4, 59:16-19, 60:3-11; *see also* Doc. # 178, ¶ 22, p. 11 (Plaintiff "suffered no injury as a result of a physical attack by Ms. Wright or her children . . . .").

C.     **Facts Relevant to Nationwide**

On May 17, 2006, Nationwide issued its Homeowner's Policy No. HNC 001706509-0 (the "Nationwide Policy") for the policy period of May 17, 2006, to May 17, 2007, which named Wright as the "insured." (*See generally* Nationwide Policy, Doc. # 162, Ex. Z). Nationwide notified Wright that the Nationwide Policy was cancelled effective January 4, 2007, due to non-payment of the premium. (Doc. # 162, Ex. AA). On May 17, 2006, Nationwide issued its Personal Umbrella Liability Insurance Policy No. PENC2602234172 (the "Umbrella Policy")[2] for the policy period of May 17, 2006, to May 17, 2007, in which Wright was the named insured. (*Id.* at Ex. BB).

---

[2]The Nationwide Policy and the Umbrella Policy shall be jointly referred to as the "Nationwide Policies."

In relevant part, the Nationwide Policy contained the following language:

## DEFINITIONS

\* \* \*

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

\* \* \*

8. Under Section II "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
 a. "Bodily injury"; or
 b. "Property damage".

\* \* \*

## SECTION II - LIABILITY COVERAGES

\* \* \*

**A.** **COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
1. Pay up to our limit of liability for the damages for which an "insured" is legally liable.

\* \* \*

## SECTION II - EXCLUSIONS

\* \* \*

**E.** **COVERAGE E - Personal Liability and COVERAGE F - Medical Payments to Others**

Coverages E and F do not apply to the following:

**1.** **Expected or Intended Injury**

"Bodily Injury" or "property damage" which is expected or intended by an "insured" even if the resulting " bodily injury" or "property damage":

    **a.**    Is of a different kind, quality or degree than initially expected or intended; or

    **b.**    Is sustained by a different person, entity, real or personal property, than initially expected or intended.

\* \* \*

**7.** **Sexual Molestation, Corporal Punishment Or** [sic] **Physical Or** [sic] **Mental Abuse**

"Bodily injury" or "property damage" arising out of any:

    **a.**    sexual activity or conduct,

    **b.**    corporal punishment, or

    **c.**    physical or mental abuse.

This exclusion applies whether or not any acts were intentional or unintentional and whether or not the acts were in violation of any criminal or penal code or statute.

\* \* \*

### SECTION II - CONDITIONS

\* \* \*

**I.** **Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during this policy period.

(*See* Nationwide Policy). Similarly, the Umbrella Policy contains the following relevant language:

**I.** **Definitions**

\* \* \*

8

**E.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results. "Bodily injury" does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

* * *

**K.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**1.** "Bodily injury"; or

**2.** "Property damage".

* * *

**II. Coverages**

**A. Insuring Agreement**

We will pay damages, in excess of the "retained limit", for:

**1.** "Bodily injury" or "property damage" for which an "insured" becomes legally liable due to an "occurrence" to which this insurance applies; and

* * *

**III. Exclusions**

**A.** The coverages provided by this policy do not apply to:

**1.** "Bodily injury" or "property damage" arising out of an act which is expected or intended by one or more "insureds" to cause "bodily injury" or "property damage". This Exclusion (A.1) applies even if the "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

9

>    **b.** Is sustained by a different person, entity, real or personal property than initially expected or intended.
>
>    * * *
>
> **14.** "Bodily injury", "property damage" or "personal injury which arises out of:
>
>    * * *
>
>    **b.** Sexual activity or conduct, corporal punishment or physical or mental abuse.
>
>    > This exclusion applies whether or not any acts were intentional or unintentional and whether or not the acts were in violation of any criminal or penal code or statute . . .

(*See* Umbrella Policy).

The acts said to have caused injury to Plaintiff during the period of time the Nationwide Policies were in effect are substantially similar to those referred to above (i.e., harassing phone calls from a SpoofCard account, text messages, and emails sent to Plaintiff and others). (*See* Deposition of Beth C. Boggs, 139:12-140:12). There is no evidence presented indicating Wright or anyone associated with her caused physical injury to Plaintiff as a result of a physical attack at any time while the Nationwide Policies were in effect.

## II. LEGAL STANDARDS

Under Fed. R. Civ. P. 56, summary judgment should be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On summary judgment, a district court must view the facts "in the light most favorable to the nonmovant, giving it the benefit of all reasonable

inferences to be draw from the facts." *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990). A court does not weigh the evidence to resolve disputed facts, but instead determines whether there are genuine issues of fact that must be resolved at trial. *See Heritage Constructors, Inc. v. City of Greenwood, Ark.*, 545 F.3d 599, 601 (8th Cir. 2008).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Mo. ex rel. Garstang v. U.S. Dep't of Interior*, 297 F.3d 745 (8th Cir. 2002) (citations omitted). If a moving party carries its initial burden, the party opposing summary judgment must go beyond the pleadings, and by affidavits or by the "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a party bearing the burden of proof on an essential element of a claim does not make a sufficient showing on the element, the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323. Insurance policy interpretation and construction, including the determination of whether ambiguities exist, is a matter of law and, therefore, is amenable to summary judgment. *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991).

## III. ANALYSIS

### A. Choice of Law

In a diversity case, the Court applies Missouri's choice of law principals. *See Highwoods Props., Inc. v. Executive Risk Indem., Co.*, 407 F.3d 917 (8th Cir. 2005). Under Missouri law, the most significant relationship test applies to determine the applicable law in contract cases, including those involving the interpretation and construction of insurance contracts. *Superior Equip. Co. v. Maryland Cas. Co.*, 986 S.W.2d 477, 480 (Mo. Ct. App. 1998).

In this case, Kansas law applies to the issue of contract interpretation. All insurance policies presently at issue were issued to Wright, then a Kansas citizen, to insure a residence in Kansas. No party disputes Kansas law applies to issue of contract interpretation. All other issues in this equitable garnishment action are controlled by Missouri law.

**B.     General Law Regarding Insurance Policy Construction**

When construing an insurance policy a court must "consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter and the purpose to be accomplished." *Bramlett v. State Farm Mut. Auto. Ins. Co.*, 468 P.2d 157, 130 (Kan. Ct. App. 1970). Insurance policies "must be construed according to the sense and meaning of the terms used," and if the language of the policy is clear and unambiguous, "it must be taken in its plain, ordinary and popular sense." *Id.* When determining the parties' intent, "the test is not what the insurer intends the printed words of the policy to mean, but rather what a reasonable person placed in the position of the insured would have understood the words to mean." *Topeka Ry. Equip., Inc. v. Foremost Ins. Co.*, 614 P.2d 461, 464 (Kan. Ct. App. 1980). If a policy provision is ambagious, the provision is construed against the insurer and in favor of the insured. *Id.* Liability not clearly excluded from coverage under a general, comprehensive liability insurance contract is presumed to have been included. *Id.*

**C.     American Family's Motion**

Given the facts presented, Plaintiff's claim against American Family must fail. The terms of the Am. Fam. Policy are clear and unambiguous. The Am. Fam. Policy unambiguously excludes from coverage personal liability arising from intentional acts, injuries arising from emotional or

12

mental distress and similar injuries unless such injuries arise out of actual bodily harm, or abuse. Plaintiff suffered no physical, bodily injury during the time the Am. Fam. Policy was in effect, and, regardless, any injury Plaintiff did or may have suffered during the policy period arose out of intentional acts, rather than "accidents," which preclude coverage.

First, the Am. Fam. Policy clearly and unambiguously states that coverage only applies when an event potentially giving rise to coverage, or an "occurrence," is accidental and expressly excludes coverage for any bodily injury intentionally cause:

> **Occurrence** means an accident . . . which results during the policy period . . .
>
> \* \* \*
>
> **We** will pay, up to **our** limit, compensatory damages for which any insured is legally liable because of **bodily injury** . . . cause by an **occurrence** covered by this policy.
>
> \* \* \*
>
> **Intentional Injury.** **We** will not cover **bodily injury** . . . caused intentionally by or at the direction of any insured even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of any insured.

The term "accident" is defined as "[a]n unexpected and undesirable event." *Webster's II New College Dictionary* 6 (1995). "Intentional" is defined as "[d]eliberately done." *Id.* at 577.

The acts giving rise to the Judgment in the underlying case that occurred during the time the Am. Fam. Policy was in effect, i.e., (A) six (6) telephone calls to Plaintiff or other regarding Plaintiff; (B) the interception of an e-mail to Plaintiff by Wright's son; and (C) Plaintiff's girlfriend receiving phone calls and text messages she believed were from Wright, cannot be termed accidents falling within the Am. Fam. Policy's definition of "occurrence." Each act mentioned above necessitated Wright or another party make a deliberate and intentional decision to perform the act.

13

Thus, no act upon which liability is argued to attach may be classified as an "occurrence" falling within the Am. Fam. Policy's coverage. Further, any injury to Plaintiff arising from any of the acts mentioned above were caused intentionally by Wright or another person. It is wholly foreseeable that such acts of intentional harassment and invasions of privacy would result in emotional or psychological damage to Plaintiff. Thus, the "**Intentional Injury**" provision applies to prevent coverage. *See Commercial Union Assur. Co., PLC v. Oak Park Marina, Inc.*, 198 F3d 55, 59 (2nd Cir. 1999) (stating there can be "no coverage for damages that 'flow directly and immediately" from an insured's intentional act").

Additionally, Plaintiff has not suffered a bodily injury as that term is used in the Am. Fam. Policy. As explained above, the term "bodily injury" is defined in the Am. Fam. Policy as meaning "bodily harm, sickness or disease," but "does not include" certain communicable diseases and the like or "emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person."

In *Rockgate Mgmt. Co. v. CGU Ins., Inc./PG Ins. Co. of N.Y.*, 88 P.3d 798 (Kan. Ct. App. 2004), the Kansas Court of Appeals, in a similar case, held that emotional distress without accompanying physical injury did not qualify as "bodily injury" within the meaning of an insurance policy containing language similar to that found in the Am. Fam. Policy. There, the policy at issue contained a general definition of "bodily injury" very similar to the definition in the Am. Fam. Policy. *Rockgate*, 88 P.3d at 803 ("Within the policy, 'bodily injury' is defined as 'bodily injury, sickness or disease . . . ."). However, it appears the *Rockgate* policy did not include the Am. Fam. Policy's more specific exclusion from the definition of emotional or mental distress, mental anguish, mental injury, or similar injuries. *See id.* Nevertheless, the Court of Appeals reasoned that "[w]here

14

the policy defines bodily injury as bodily injury, it seems to imply that actual physical injury must occur for policy coverage." *Id.*

Here, Plaintiff admits that neither Wright nor anyone associated with her ever caused him physical, bodily injury. Despite this, Plaintiff argues his physiological injuries, including his alleged PTSD, constitute "bodily injury" falling within the meaning of that term as used in the Am. Fam. Policy because Plaintiff's emotional distress is accompanied by physical symptoms such as anxiety, loss of appetite, depression, and shortness of breath. Plaintiff cites cases where courts have indeed held that emotional distress accompanied by physical symptoms might qualify as "bodily injury," defined generally as "bodily injury, sickness or disease." *See e.g. Haralson v. State Farm Mut. Auto Ins. Co.*, 564 F. Supp. 2d 616 (N.D. Tex. 2008). Such case, however, are not universally accepted by other courts or this Court. *See State Farm Mut. Auto. Ins. Co. v. D.L.B. ex rel. Brake*, 881 N.E.2d 665 (Ind. 2008) (holding emotional distress accompanied by physical symptoms, absent any physical contact, does not constitute bodily injury); *Dahlke v. State Farm Mut. Auto. Ins. Co.*, 451 N.W.3d 813 (Iowa 1990) (same); *Zerr v. Erie Ins. Exch.*, 667 A.2d 237 (Pa. Super. 1995) (same).

First, the cases cited by Plaintiff deal with policies involving no more than the simplified definition of "bodily injury" as generally "bodily injury, sickness or disease," whereas here the Am. Fam. Policy continues to refine the definition of the term "bodily injury" to specifically exclude "emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person." From this definition, a reasonable person placed in the position of the insured would have understood the term "bodily injury" to exclude coverage for any and all emotion type injuries, including any physical symptoms that might be cause by or tied to the emotional injury unless the emotional injury was caused by actual physical bodily contact.

15

Second, even if the Am. Fam. Policy did not more specifically refine the definition of "bodily injury," relying instead on the simple "bodily harm, sickness or disease" definition, there is no justification for interpreting the term in a manner that excludes coverage for "purely emotional distress" but provides coverage when emotional distress is accompanied by physical manifestations. Such an interpretation is illogical, and the Court has no reason to believe the courts of Kansas would adhere to such an interpretation. Physical manifestations of emotional distress or other related emotional harm may offer insight into the severity or extent of the emotional trauma suffered, but, absent some physical, bodily harm, such physical manifestations arise out of and are directly caused by purely emotional injury, which is clearly excluded from coverage.

Consistent with the above, the Court finds Plaintiff suffered no physical, bodily harm or injury as a result of any action taken by or on behalf of Wright during the period of time the Am. Fam. Policy was in effect. The Court further finds Plaintiff's alleged injuries arise from purely emotional harm, which is clearly and unambiguously excluded from coverage.

**D.    Nationwide's Motion**

The analysis of Nationwide's Motion and the Nationwide Policies is very similar to that discussed above regarding American Family's Motion and the Am. Fam. Policy language. Thus, duplicative discussion will be avoided here when possible. Plaintiff's alleged injuries suffered during the time the Nationwide Policies were in effect are the same as those set forth above. Additionally, the acts that occurred during the time the Nationwide Policies were in effect that allegedly caused Plaintiff's injuries are substantially the same as those set forth in the section directly above (i.e., harassing phone calls from a SpoofCard account, text messages, and emails sent to Plaintiff and others).

Like the Am. Fam. Policy, the Nationwide Policy defined "bodily injury" to mean "bodily harm, sickness or disease." It also similarly defined "occurrence" to mean "an accident." It further excluded coverage for any "bodily injury" that was expected or intended and for any "bodily injury" arising out of any "physical or mental abuse." However, the Nationwide Policy did not, like the Am. Fam. Policy, contain a provision refining the definition of the term "bodily injury" to explicitly exclude "emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person."

The Nationwide Policy does not afford coverage for the same reasons as set forth in the previous section. None of the acts giving rise to Plaintiff's alleged relevant injuries may be termed "accidental." Thus, no "occurrence" within the meaning of the Nationwide Policy occurred that would trigger coverage. Further, as discussed above, Plaintiff did not suffer any physical, bodily harm cause by Wright. Rather, Plaintiff claims he suffered emotional harm caused by Wright. Consistent with the discussion in the previous section, no coverage exists for emotion harm absent some actual bodily harm to Plaintiff regardless of whether the emotion harm is so sever as to manifest physical symptoms. In accordance with the *Rockgate* decision, emotional distress without accompanying physical injury does not qualify as "bodily injury" within the meaning of the Nationwide Policy. Thus, the Court finds the Nationwide Policy does not provide coverage here.

The Umbrella Policy likewise does not provide coverage. In addition to the more generic definition of "bodily injury" used in the Nationwide Policy, the Umbrella Policy further restricts the term to exclude "emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm." "Occurrence" is also defined as an

17

"accident," and there are further exclusions for intentional harm and harm arising from sexual activity or mental abuse.

Like the Am. Fam. Policy and the Nationwide Policy, the Umbrella Policy does not provide coverage because no "occurrence" within the meaning of the Umbrella Policy occurred. Further, like the Am. Fam. Policy, the Umbrella Policy clearly and unambiguously excludes coverage for emotional distress or similar injuries arising from emotional harm. Plaintiff's alleged injuries are emotional, and any physical manifestations arise directly from emotion harm rather than any physical, bodily injury. Thus, the Court finds the Umbrella Policy does not provide coverage.

**E.     Plaintiff's Motion**

Having found no coverage exists under the Umbrella Policy, Plaintiff's Motion for Summary Judgment on the Umbrella Policy is moot and shall be denied.

## CONCLUSION

The language of the Am. Fam. Policy, the Nationwide Policy, and the Umbrella Policy all clearly and unambiguously exclude coverage under the circumstances and facts presented in this case. The acts Plaintiff alleges caused him injury were intentional, not accidental, and both fall outside all the policies' definitions of "occurrence" and, regardless, would clearly fall within each policies' exclusion relating to intentional harm. Further, Plaintiff's alleged injuries are emotional in nature, including Plaintiff's alleged physical manifestation of such emotion injuries, and are not in any way attributable to physical, bodily harm to Plaintiff's person. No policy provides coverage for such emotional harm. For these reasons and those set forth above, Defendants American Family and Nationwide's Motions for Summary Judgment are hereby GRANTED and Plaintiff's Motion for Summary Judgment Against Nationwide on the Umbrella Policy is hereby DENIED.

**IT IS SO ORDERED.**

                                                              s/ Gary A. Fenner
                                                              Gary A. Fenner, Judge
                                                              United States District Court

DATED: **January 14, 2011**